UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARSHA RIGA, et al.,

        Plaintiffs,

        v.                                            Case No. C-1-02-531

NORTH COLLEGE HILL CITY SCHOOL
DISTRICT, et al.,

        Defendants.

**ORDER**

This matter is before the Court upon defendants' motion for summary judgment (doc. 21) plaintiffs' opposing memorandum (doc. 28), and defendants' reply (doc. 29). The parties have submitted proposed findings of fact and conclusions of law which the opposing side has highlighted (docs. 27, 29 attachment).

**I. Procedural history**

Plaintiffs Marsha Riga and her daughter (hereinafter "Child") brought this action under Title IX of the Education Amendment of 1972, 20 U.S.C. § 1681 et seq., and 42 U.S.C. § 1983 against North College Hill School District (District)[1] and its superintendent, Gary Gellert, in

---

[1] Defendants asserted in their motion to dismiss that the North College Hill District Board of Education is the proper designation for the governmental entity, and the Court referred to the governmental entity as the "Board" in its Order on the motion. Plaintiffs continue to refer to the District as the defendant governmental entity and the Court will therefore do the same in this Order.

both his official and individual capacities. Plaintiffs also brought state law claims for negligent and intentional infliction of emotional distress and a claim for punitive damages under both federal and state law.

Plaintiffs filed an amended complaint on October 24, 2002. Defendants moved to dismiss portions of the amended complaint. Before the Court had ruled on the motion, defendants filed their motion for summary judgment which is presently before the Court. The Court subsequently addressed the motion to dismiss and granted it as to certain claims. The Court denied the motion as to plaintiffs' Title IX claim against Gellert in his official capacity (Count I) and as to the state law claims for negligent and intentional infliction of emotional distress and punitive damages against Gellert (Counts IV, V and VI). The only claims remaining in the lawsuit are those claims and the Title IX and state law claims against the District. The Court will address defendants' motion for summary judgment insofar as it relates to these pending claims.

## II. Undisputed facts

1. During the relevant time period, Child was a seventeen-year old student in her senior year at North College Hill High School (NCH).
2. Marsha Riga is Child's mother.
3. At all relevant times, defendant Matt Baker was a teacher employed by defendant North College Hill City School District (District).
4. On January 18, 2002, Child reported to her English teacher Kristin Brown that on the previous day, Baker had sent her inappropriate text messages while parked outside her home.

5. Although Baker and Child had sent each other text messages in the past, Child had never reported this to her mother or a school administrator/teacher.

6. Brown and Child went to see a guidance counselor at NCH, who immediately took Child to see Principal Steven Sorrell. After listening to Child, Sorrell asked her to prepare a written statement of the incident, which she did immediately. In her statement, Child also reported a prior incident which had occurred on January 16, 2002. At that time, Baker had initiated an exchange with Child during which he informed her that he was painting his house in preparation for a move. When Child inquired as to where he was going to move, Baker replied, "Nowhere without you."

7. During that same meeting with Sorrell, Child provided him with Baker's cell phone number and told Sorrell how Baker had surreptitiously stored her telephone number in his telephone. The meeting ended, and Sorrell asked Child to have her mother call him about the incidents. Child then went home.

8. After Child had left school that day, she received another text message from Baker in which he told her that he wanted to put his hands all over her body because he thought it was "banging". Child saved this message and immediately returned to school with a friend to show the message to Sorrell. Sorrell then instructed Child what to reply to Baker in order to confirm that the message had been sent by Baker. Sorrell told Child to save any other messages she received from Baker.

9. Thereafter, Child did not receive any more text messages from Baker.

10. On the same date Child met with Sorrell, Sorrell spoke with Superintendent Gellert and called Marsha Riga. Sorrell told Marsha Riga that he was taking the matter very seriously. Marsha Riga testified that this was the first time she had ever learned of any inappropriate conduct by Baker toward Child.

11. Child did not return to NCH until Tuesday, January 22, because Monday was Martin Luther King Day. At one point during the day on Tuesday, Baker pulled Child out of the hallway to give her a t-shirt from last season's softball team since he no longer needed it.

12. Child did not attend Baker's psychology class that day because she felt uncomfortable. Child had the permission of school administrators to skip his class and attend different classes.

13. Before Child left school on January 22, she met with Superintendent Gellert and Principal Sorrell to discuss her reports of Baker's inappropriate conduct. Marsha Riga did not attend that meeting. Gellert asked Child to prepare another written statement concerning her charges against Baker, which she did. In her statement, she reported previous instances where Baker had made inappropriate comments to her.

14. Following his meeting with Child on January 22, Gellert kept Child's telephone as well as the t-shirt Baker had given her that day. Gellert's response to the information provided to him was to confiscate Baker's computer from his classroom. Gellert also called Marsha Riga after the meeting and asked her to obtain hard copies of the text messages.

15. Child did not return to school for the balance of that week. However, shortly after making her reports of Baker's conduct to school administrators, Child began receiving messages accusing her of ruining Baker's life and career. Marsha Riga reported this to school administrators.

16. After reporting the incidents of inappropriate communications from Baker and receiving the accusatory messages from other students, Child was briefly hospitalized by her psychologist, who she had been seeing for unrelated emotional problems.

17. On January 28, Gellert sent Baker a letter informing him of a meeting on Wednesday, January 30, regarding Baker's possible termination. At the January 30 meeting, Gellert confronted Baker with the allegations and the proof he had gathered from his investigation. Baker was immediately relieved of his teaching duties and suspended without pay.

18. Marsha Riga learned that Baker had been placed on leave one day after she had faxed hard copies of Baker's messages to Gellert.

19. Following her release from the hospital, Child did not immediately return to school at NCH, choosing instead to enroll at Colerain High School. However, she returned to NCH in April 2002 and graduated with her class.

20. Eventually, Baker was allowed to resign his teaching position with the District without further disciplinary proceedings having taken place.

21. When asked at her deposition to explain why she sued Gellert, Child testified that she believed he was acting weird towards her as though he thought she was making up her story.

22. Marsha Riga sued Gellert because she believes he did not act quickly enough to suspend Baker. Although only twelve days elapsed between Child's first complaint to school administrators and the time Baker was relieved of his teaching duties, Marsha Riga believes that Gellert had enough evidence from "day one" with the messages on Child's cell phone to suspend Baker.

23. Marsha Riga is not aware of any other student who had made a complaint about inappropriate sexual conduct by a teacher at NCH. She has no information that Baker engaged in inappropriate sexual conduct or conversation with a student other than Child.

24. Gellert testified that he was not aware of any reports, formal or informal, of inappropriate behavior by Baker prior to learning of Child's report concerning Baker.

### III. Summary judgment motion

Defendants Gellert and the District move for summary judgment on all claims against them. Defendants contend that they are entitled to summary judgment on the Title IX claim because (1) Baker's text messaging does not constitute "sexual harassment" as defined under Title IX, and (2) even if the conduct could be construed as sexual harassment, there is no evidence of deliberate indifference. Defendants claim that they are entitled to summary judgment on plaintiffs' claims for intentional and negligent infliction of emotional distress because the conduct by Gellert and the District cannot be characterized as extreme and outrageous and there is no evidence that either defendant breached a duty owed to plaintiffs. Finally, defendants move for summary judgment on the punitive damages claims. They contend that punitive damages are not recoverable against the District as a matter of law, there is no evidence that Gellert engaged in a discriminatory practice so as to recover such damages under 2 U.S.C. § 1981a, and there is

no evidence of "malice, aggravated or egregious fraud, oppression or insult" as required for an award of punitive damages under O.R.C. § 2315.21(B).

In response, plaintiffs contend that defendants' individual or joint failure to promptly respond to Child's complaints violated her rights under Title IX. Plaintiffs assert that Baker's conduct constitutes sexual harassment which created a hostile environment and that a jury could conclude that the delay in protecting Child from the possibility of further sexual harassment by Baker constitutes deliberate indifference to Child's right to be free from such discriminatory conduct. Plaintiffs further argue that the impact of the sexual harassment by Baker, coupled with the District's delay in responding to Child's complaints, rises to the level of intentional infliction of emotional distress. They claim that the allegedly unnecessary delay in removing Baker from the classroom exacerbated Child's reaction to the harassing conduct and resulted in her being briefly hospitalized for emotional distress. Plaintiffs also contend that Gellert's failure to respond to the complaints until January 22, the first day of school after Child first complained, convinced Child that Gellert did not believe her complaints, caused her to fear that she might be subjected to further harassment from Baker, and contributed to her severe emotional injury. Plaintiffs further state that because Baker remained at school after Child had complained, he was defending himself to Child's friends, who subsequently blamed her for the trouble Baker appeared to be in. Finally, plaintiffs acknowledge that while the District is not subject to punitive damages, Gellert's delay in taking action against a teacher who was sexually harassing a student subjects him to liability for punitive damages under Ohio and federal law.

## IV. Summary judgment standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action. This Court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact. ***Celotex Corp. v. Catrett***, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." ***Anderson v. Liberty Lobby***, 477 U.S. 242, 248 (1986) (quoting ***First Nat'l Bank of Arizona v. Cities Serv. Co.***, 391 U.S. 253 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. ***Anderson***, 477 U.S. at 255 (citing ***Adickes v. S.H. Kress & Co.***, 398 U.S. 144, 158 (1970)).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial. ***Anderson***, 477 U.S. at 249. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. ***Id.*** at 249 (citing ***Cities Serv.***, 391 U.S. at 288-289). If the evidence is merely colorable, ***Dombrowski v. Eastland,*** 387 U.S. 82, 84 (1967), or is not significantly probative, ***Cities Serv.***, 391 U.S. at 290, judgment may be granted. ***Anderson***, 477 U.S. at 249.

## V. Opinion

### A. Title IX claim

Title IX, 20 U.S.C. § 1681(a), provides that, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any educational program or activity receiving Federal financial assistance. . . ." A school district may be held liable for damages in an implied right of action under Title IX for the sexual harassment of a student by a teacher employed by the district so long as the plaintiff satisfies her standard of proof. ***Gebser v. Lago Vista,*** 524 U.S. 274 (1998). An educational institution cannot be held liable under Title IX for the acts of its employees under a theory of respondeat superior but can only be held liable for its own actions. ***Id.***; ***Klemenic v. Ohio State University,*** 2001 FED App. 0288P (6th Cir.)(slip op.).

In order to establish a claim against an educational institution under Title IX, the plaintiff must show: (1) she was subjected to sexual harassment; (2) she provided actual notice of the situation to an "'appropriate person'," who was, at a minimum, an official of the educational entity with authority to take corrective action and to end discrimination"; and (3) the entity's response to the harassment amounted to "deliberate indifference". ***Klemenic,*** 2001 FED App. 0288P (citing ***Morse v. Regents of the Univ. of Colorado,*** 154 F.3d 1124, 1127-28 (10th Cir. 1998)(citing ***Gebser,*** 524 U.S. at 289-91)). The Supreme Court in ***Gebser,*** 524 U.S. at 290, elaborated on the "deliberate indifference" standard as follows:

> The administrative enforcement scheme presupposes that an official who is advised of a Title IX violation refuses to take action to bring the recipient into compliance. The premise, in other words, is an official decision by the recipient not to remedy the violation.

The Sixth Circuit has stated that, "[a]lthough no particular response is required . . . the school district must respond and must do so reasonably in light of the known circumstances." ***Vance v. Spencer County Public School District,*** 231 F.3d 253, 260-61 (6th Cir. 2000).

In addressing the deliberate indifference standard in the context of student-to-student harassment, the Supreme Court has indicated that the deliberate indifference "must, at a minimum, 'cause [students] to undergo' harassment or 'make them liable or vulnerable' to it." ***Davis v. Monroe County Bd. of Education,*** 526 U.S. 629, 645 (1999). The Supreme Court in ***Davis*** went on to determine that school administrators will be deemed deliberately indifferent "only where the [institution's] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Id.* at 649. The Court noted that in an appropriate case, the trial court may on a motion to dismiss, a motion for summary judgment, or a motion for directed verdict identify a response as not "clearly unreasonable" as a matter of law**.** *Id.*

This Court finds on the basis of the undisputed facts and evidence before it that defendants Gellert and the District are entitled to summary judgment as a matter of law on Child's Title IX claim against them. Child has come forward with evidence to satisfy the first two prongs of her claim. First, Baker's actions could reasonably be construed as sexual harassment. Second, Child provided actual notice to an appropriate person with authority to take corrective action and end the harassment. Child has not, however, satisfied the third prong of her claim because she has not come forward with evidence which supports a finding that defendants' response to Child's complaints of sexual harassment by Baker was "clearly unreasonable". To the contrary, the facts as set forth below clearly demonstrate that rather than making a conscious decision to disregard Child's complaints and to take no serious action in response thereto,

defendants acted with reasonable promptness and took reasonable steps to investigate the complaints and remedy the situation so as to protect Child from further harassment.

It is undisputed that school administrators began to take responsive action the first day Child reported a complaint to them. When Child first reported her complaint to Principal Sorrell, he asked Child to write a statement and have her mother contact him. After Child had returned to school that same day to show Sorrell an inappropriate text message she had received from Baker after leaving school, Sorrell took action to confirm that the message had been sent by Baker and instructed Child to save any other messages she received from Baker. Also on that same day, Sorrell contacted Superintendent Gellert and called Marsha Riga. The next day of classes, school administrators permitted Child to skip Baker's class and Superintendent Gellert and Sorrell met with Child to discuss her reports of Baker's inappropriate conduct. Geller asked Child to prepare another written statement. Gellert kept Child's telephone and the t-shirt Baker had given her that day, confiscated Baker's computer from his classroom, and contacted Marsha Riga and asked her to obtain hard copies of the text messages. Six days later, Superintendent Gellert informed Baker of a meeting to be held on January 30 regarding Baker's possible termination. On the day of the meeting, after Gellert had confronted Baker with the allegations and proof Gellert had gathered during his investigation, including the hard copies of the text messages provided by Marsha Riga, Baker was relieved of his teaching duties and suspended without pay.

It is difficult to fathom what more defendants could have done to address Child's complaints. Indeed, plaintiffs have not suggested an alternative course of action other than to assert that defendants should have acted more promptly by suspending Baker the first day they received Child's complaint and confirmed that the inappropriate text message she showed to

Sorrell had been sent by Baker. Assuming defendants could have lawfully suspended Baker at that point in time, their decision not to do so and instead to thoroughly investigate the situation and secure evidence over a period of twelve days before suspending Baker cannot be deemed "clearly unreasonable". This is particularly true since the delay did not subject Child to further sexual harassment by Baker. Child received no additional text messages from Baker after the first day she reported her complaints to Principal Sorrell and the t-shirt incident, although understandably unwelcome and emotionally upsetting, is not appropriately characterized as sexual harassment. Although Child unfortunately received accusatory messages from other students in the interim between her first complaint to Sorrell and Baker's suspension, this does not suggest that defendants' actions taken in response to Child's complaint and the timing of those actions was unreasonable. There is no indication in the record that defendants should have reasonably anticipated this conduct by other students, that the conduct occurred at school, that defendants acted unreasonably by failing to take some additional action to stop the conduct after becoming aware of it, or even that such conduct continued after defendants became aware of the initial accusatory messages.

For all of these reasons, defendants' response to Child's complaints of sexual harassment was not "clearly unreasonable" and cannot be deemed "deliberate indifference" as a matter of law. Defendants are therefore entitled to summary judgment on the Title IX claim.

### B. Intentional infliction of emotional distress

The Ohio courts recognize the tort of intentional infliction of emotional distress. ***Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of America***, 6 Ohio St.3d 369, 453 N.E.2d 666 (1983). The elements of a claim for intentional infliction of

emotional distress are: "1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go 'beyond all possible bounds of decency' and was such that it can be considered as 'utterly intolerable in a civilized community,' . . . 3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and 4) that the mental anguish suffered by plaintiff is serious and of a nature that 'no reasonable man could be expected to endure it.'" **Pyle v. Pyle**, 11 Ohio App.3d 31, 34, 463 N.E.2d 98, 103 (8th Dist. 1983).

Plaintiffs have failed to come forward with evidence to satisfy the elements of a claim for intentional infliction of emotional distress. There is no evidence in the record to suggest that Gellert and the District intended to cause emotional distress to plaintiffs or knew that their actions or delay in taking certain action would do so. Moreover, no reasonable trier-of-fact could conclude from the evidence before the Court that defendants' conduct was extreme and outrageous. For these reasons, defendants Gellert and the District are entitled to summary judgment on this claim.

### C. Negligent infliction of emotional distress

Defendants argue that plaintiffs' claim for negligent infliction of emotional distress is unfounded because there is no evidence that either the District or Gellert did anything to plaintiffs to cause them serious emotional distress. Plaintiffs contend that defendants are not entitled to summary judgment on this claim. Plaintiffs assert that due to Gellert's delay in removing Baker from his teaching duties, Child continued to fear she might be subjected to further harassment by Baker. Plaintiffs allege that the decisions made by Gellert during his

investigation contributed to Child's serious emotional injury initially caused by Baker's sexually harassing conduct.

For the reasons stated above, the evidence of record and the undisputed facts do not permit a finding in plaintiffs' favor on their claim for negligent infliction of emotional distress. The evidence is not sufficient to enable a jury to determine that either the District or Gellert breached a duty to plaintiffs or that they acted in such a manner as to cause plaintiffs serious emotional distress. Defendants are therefore entitled to summary judgment on this claim.

### D. Punitive damages

Punitive damages are not recoverable against the District. For the same reasons discussed in connection with plaintiffs' other claims, there is no basis for an award of punitive damages against Gellert. Accordingly, defendants are entitled to summary judgment on plaintiffs' punitive damages claims.

### V. Conclusion

Defendants' motion for summary judgment is **GRANTED.** This case is **DISMISSED** and is **TERMINATED** on the docket of the Court at plaintiffs' cost.

**IT IS SO ORDERED.**

S/ Herman J. Weber
HERMAN J. WEBER
SENIOR JUDGE, UNITED STATES DISTRICT COURT

J:\HJWA\02-531tixmsj.wpd